1  ALEXANDER B. CVITAN (SBN 81746),
   Email: alc@rac-law.com
2  J. DAVID SACKMAN (SBN 106703)
   Email: jds@rac-law.com
3  MARSHA M. HAMASAKI (SBN 102720), Members of
   Email: marshah@rac-law.com
4  REICH, ADELL & CVITAN, A Professional Law Corporation
   3550 Wilshire Boulevard, Suite 2000
5  Los Angeles, California  90010-2421
   Telephone:  (213) 386-3860, Facsimile:  (2l3) 386-5583
6
   Attorneys for Plaintiff Construction Laborers Trust
7  Funds for Southern California Administrative Co.

8             UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 | CONSTRUCTION LABORERS TRUST      | Case No. _____
   | FUNDS FOR SOUTHERN               |
12 | CALIFORNIA ADMINISTRATIVE        |
   | COMPANY, a Delaware limited liability | COMPLAINT FOR:
13 | company,                         | 1)    CONTRIBUTIONS TO
   |                                  |       EMPLOYEE BENEFIT
14 |                      Plaintiff,  |       PLANS;
   |                                  | 2)    PRELIMINARY AND
15 |         vs.                      |       PERMANENT INJUNCTIVE
   |                                  |       RELIEF;
16 | DIGGING DEEP INC., dba CERTIFIED | 3)    BREACH OF FIDUCIARY
17 | ENVIRONMENTAL SERVICES;          |       DUTY
   | KEVIN SCOTT SCHWEIZER, an        | [29 U.S.C. §§ 185(a), 1109(a), 1132 &
18 | individual,                      | 1145]
19 |                                  |
20 |                      Defendants. |
21

22

23

24      Comes now Plaintiff CONSTRUCTION LABORERS TRUST FUNDS FOR

25 SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited

26 liability company, and alleges, as follows:

27

28

                              -1-
   342227v1

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction of this action under Sections 502 and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132 and 1145, as an action to collect contributions to multi-employer employee benefit plans, and for breach of fiduciary duties; and under Section 301(a) of the Labor Management Relations Act, (LMRA), 29 U.S.C. § 185(a), as an action to enforce collective bargaining agreements.  Venue is proper in this district in that the plans are administered, performance and breach took place, and the Defendants reside and/or are engaged in business in this district.

## PARTIES

2.      Plaintiff Construction Laborers Trust Funds for Southern California Administrative Company (CLTF) is a Delaware Limited Liability Company.  Plaintiff CLTF appears solely in its capacity as an administrator and agent for collection of several employee benefit plans, and a fiduciary as to those plans, including the Laborers Health and Welfare Trust Fund for Southern California, Construction Laborers Pension Trust for Southern California, Construction Laborers Vacation Trust for Southern California (Vacation Trust), Laborers Training and Re-Training Trust Fund for Southern California,  Fund for Construction Industry Advancement,  Center for Contract Compliance, Laborers Contract Administration Trust Fund for Southern California, Laborers' Trusts Administrative Trust Fund for Southern California, and Southern California Partnership For Jobs (collectively "Trust Funds").  Each of the Trust Funds are express trusts, created by written agreements, are employee benefit plans within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), multi-employer plans within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A), and jointly-administered labor-management trusts under LMRA § 302(c)(5), 29 U.S.C. §

-2-

186(c)(5).  The Plaintiff's principal place of business is in, and the Trust Funds are administered in, the County of Los Angeles, State of California.

3.    Plaintiff is a fiduciary as to the Trust Funds, in that it:

    a.   Exercises discretionary authority or discretionary control respecting the collection of delinquent (or possibly delinquent) contributions to the Trust Funds, including but not limited to discretion in auditing employers, deciding what claims to assert, acting as agent of the Trust Funds in asserting claims, waiving liquidated damages, settling claims, and releasing claims; and

    b.   Exercises authority or control respecting management or disposition of assets of the Trust Funds, including but not limited to, receiving delinquent contributions collected and holding them in a bank account in its own name over which it has check-writing authority, and then exercising discretion in allocating those assets among the different Trust Funds, different participants, different time periods and different jobs.

4.    Defendant, Digging Deep, Inc. ("Employer"), is a California corporation doing business under the name of Certified Environmental Services, and is duly licensed to engage in business in the State of California in an industry affecting interstate commerce, with its principal place of business in the City of Highland, County of San Bernardino, State of California.

5.    Defendant Kevin Scott Schweizer ("Owner") is the President and Responsible Managing Officer of the Employer.  Plaintiff is informed and believes, and on that basis alleges, that Skajem is the majority shareholder of the Employer, that he has check-writing authority over all accounts of the Employer, including those used

342227v1

for payroll and to pay contributions to the Trust Funds, and that he is responsible for the preparation of payroll, certified payroll reports, and reports to the Trust Funds.

6.      Plaintiff is informed and believes and thereon alleges that Owner acted on behalf of Employer, and in its interest, in determining which employees would report to the Trust Funds, the number of hours upon which contributions would be reported as owing, and the amount and timing of payment of contributions.  Plaintiff is further informed and believes, and upon such information and belief alleges that there existed and there now exists a unity of interest, ownership and operation between Owner  and Employer such that any individuality and separateness between Owner  and Employer has ceased to exist in that Owner so controls and dominates Employer as to make any fiction of individuality and separateness between Owner and Employer such a fraud upon their creditors and any adherence to the fiction sanctions fraud and promotes injustices.

### OTHERS

7.      The Southern California District Council of Laborers and its affiliated Local Unions ("Union") was and is a labor organization representing employees in industries affecting commerce.  The Union is not a party to this action.

### AGREEMENTS

8.      On about March 2016, the Employer signed a collective bargaining agreement with the Laborers Union ("Collective Bargaining Agreement"), setting the terms and conditions of employment of certain of its employees, and agreeing to abide by the terms and conditions of the then-current multi-employer agreements of the Laborers Union, known as Master Labor Agreements (MLA), for work in the

342227v1

geographical jurisdiction of the 12 Southern California Counties.

9.      Pursuant to the Collective Bargaining Agreement and the MLA it incorporated, the Employer has submitted reports and paid contributions on behalf of certain of its employees to the Trust Funds.  The Employer also received the benefits of the Collective Bargaining Agreement by, among other things, being able to represent itself as signatory to an agreement with the Laborers in order to obtain subcontracts from general contractors who are subject to the MLA.

10.     Pursuant to the Collective Bargaining Agreement, and the MLA it incorporates, and by the acts of submitting reports and contributions, the Employer adopted and became obligated and bound to all the terms and conditions of the various Trust Agreements which created each of the Trust Funds as they may be constituted in their original form or as they may be subsequently amended.  The Collective Bargaining Agreement, MLA, and Trust Agreements will hereinafter be collectively referred to as "Agreements."

11.     The Agreements obligate Employer to pay fringe benefit contributions at the rates set forth in the Agreements for each hour worked (or paid for) by employees performing services covered by the Agreements. The Employer is required to submit monthly reports, detailing the hours worked or paid for each employee, broken down by project.  Reports and contributions for each month of work are due by the 15th of the following month, and delinquent if not reported and paid by the 20th of the following month.

12.     As to the Vacation Trust, "Contributions to the Fund and any liquidated damages payable in connection therewith, shall be deemed to be, and shall be, a part of the wages due to the employees with respect to whose work such payments are

-5-

made" and "shall be deemed to be, and shall be treated as, subject to withholding tax and social security and unemployment taxes as a part of the total compensation payable at the end of the individual employer's payroll period during which such work is performed or paid for, but the full per hour contribution shall be transmitted to the Fund."  In other words, contributing employers, such as Employer, deduct the vacation contribution from the pre-tax wages of employees on each paycheck, and then report and transmit that amount, along with other contributions, to the Vacation Trust each month.

13.     By the Agreements and pursuant to 29 U.S.C. § 1132(g)(2)(B), Employer is obligated for payment of interest on delinquent contributions from the due date of the contribution through the payment date of the contribution, at the per annum rate of five percent (5%) over the rate set by the Federal Reserve Board at San Francisco, California, effective on the date each contribution is due.

14.     By the Agreements and pursuant to 29 U.S.C. § 1132(g)(2)(C), Employer is obligated to pay to the Trust Funds liquidated damages for detriment caused by the failure of Employer to pay fringe benefit contributions in a timely manner, a sum equal to $25.00 or twenty percent (20%) of the unpaid contributions ($20.00 or 10% to the Laborers Contract Administration Trust Fund), whichever is the greater amount, for each of the Trust Funds to which Employer is required to contribute. The failure of employers to pay contributions when due causes damages to the Trust Funds and its participants beyond the value of the unpaid contributions, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes the cost of collecting the contributions from employers or third parties, the cost of special processing to restore employee fringe benefit credits because of late contributions, employee loss of health insurance coverage (even if later restored) and medical harm to participants and beneficiaries who might have foregone medical care

342227v1

when notified that their insurance ceased because of their employer's failure to pay contributions.  The liquidated damages provision of the Agreements was meant to compensate for the loss to the Trust Funds, which is incurred even if the contributions for a given month are later paid.  It is based on the Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Trust Funds' trustees.

15.    Under the terms of the Collective Bargaining Agreement and MLA, employers, including the Employer, agree to subcontract Covered Work only to entities that are signatory to a collective bargaining agreement with the Union.  If an employer subcontracts Covered Work to a non-signatory entity, or allows a subcontractor to subcontract Covered Work to a non-signatory entity, the Employer becomes liable to the Trust Funds in an amount measured by the contributions, interest and liquidated damages that would have been due if a signatory entity had performed the Covered Work.

16.    The Agreements provide the Trust Funds with specific authority to examine and copy all of Employer's payroll and business records which may be pertinent to determining whether Employer has reported all hours worked (or paid for) by employees who perform services covered under the Agreements, and/or has abided by the subcontracting provisions of the Agreements and has paid the appropriate fringe benefit contributions to the Trust Funds.  The Agreements further provide that the Employer shall be responsible for the costs of such audit, and that if litigation is necessary to enforce the audit obligation, the Employer shall be liable for attorney fees, whether or not any delinquency is discovered.

17.    On public works projects, as defined by California Labor Code §§ 1720, *et. seq.*, the Employer is required to pay no less than the prevailing wage, as determined by the California Department of Industrial Relations (DIR), for work of its

-7-

employees on those projects.  Under California Labor Code § 1773.1, and prevailing wage determinations of the DIR, this prevailing wage includes amounts required to be paid to the Trust Funds, so that if those contributions are not made, the employees have not been paid their full and complete prevailing wages for their labor on those projects.  The Employer has worked on various public works projects subject to this prevailing wage requirement during the period at issue herein, so that its employees were required to be paid a full prevailing wage on those projects, including contributions to the Trust Funds.

[AUDIT]

18.     Pursuant to the authority in the Agreements to audit employer records, Plaintiff audited the books and records of the Employer, for the period of December 1, 2016 through May 31, 2018 (Audit Period).

19.     On September 27, 2018, Plaintiff issued its audit findings, totaling $14,784.39, which included contributions, liquidated damages, audit costs, and interest to that date (Audit).

20.     The Employer did not pay the audit, as demanded.

[FORGED RELEASES]

21.     In about May 2018, the Employer forged at least one false "Status Letter," purporting to come from the Plaintiff, and falsely claiming that the Employer did not owe any contributions to the Trust Funds for the month of May 2018.  In fact, the Employer had not submitted any reports or paid any contributions for the month of May 2018, and the Plaintiff issued no such letter.

342227v1

22.     The one forged status letter came to Plaintiff's attention by inquiry from a general contractor.  Plaintiff is informed and believes, and on that basis alleges, that there are other forged letters, which have not been brought to Plaintiff's attention.

23.     These forged letters were sent by the Employer to general contractors it had contracted with, in order to falsely represent that it was not delinquent to the Trust Funds, and to thereby induce those general contractors to pay the Employer, without reduction for any delinquency to the Trust Funds.

24.     On June 12, 2018, counsel for the Trust Funds wrote to the Employer, warning of the legal consequences of the forged letters.  The Employer indicated it was a mistake, which would not happen again.  However, Plaintiff is informed and believes that this practice may have continued.

[SETTLEMENT AGREEMENT AND DEFAULT]

25.     The Employer and Plaintiff, through their respective counsel, negotiated an agreement to settle the Audit, and all delinquencies for the Audit Period, through a payment plan.  The parties entered into a written agreement to govern the payment of these contributions and associated damages due under the Agreements (Settlement Agreement).  A copy of that Settlement Agreement is attached as **Exhibit 1** here.

26.     Pursuant to the Settlement Agreement, the Employer could pay the "Settlement Amount" defined in that Agreement over time, with interest.  The Employer also agreed, as a condition of accepting the Settlement Amount, that it would report and pay its monthly contributions required by the Agreements on time, and broken down by a project basis.  If the payments called for were made, and all

342227v1

other conditions of the Settlement Agreement complied with, upon final payment of the Settlement Amount, the obligations thereunder would be released. However, if the Employer did not meet those payments, or did not comply with the other conditions, including the obligation to pay monthly contributions, then the Employer would be in "Default." If, after the notice specified, the Default was not cured, then the obligation would revert to the Default Amount ($15,188.92), plus interest, less payments received, and would become immediately enforceable.

27.   The obligations of the Settlement Agreement was secured by all property of the Employer which may be reached with a UCC-1 Financing Statement. A UCC-1 has been recorded with the California Secretary of State.

28.   The Employer made the payments, and no other, towards the Settlement Agreement, as set forth in **Exhibit 2** attached here.

29.   The Employer defaulted on the Settlement Agreement, by failing to pay its contributions for the month of March 2019. Counsel for the Plaintiff sent a Notice of Default as specified in the Settlement Agreement, on May 30, 2019. A copy of that Notice of Default is **Exhibit 3** here. The Employer failed to cure the default, so that the amount due reverted to the Default Amount, and became immediately due.

30.   The Default Amount due, accounting for all payments, and interest to August 26, 2019, is shown on Exhibit 2. This is $1,503.46. Interest continues to accrue at the rate of $0.3225 per day.

[CURRENT DELINQUENCY]

31.   Subsequent to the Audit Period (after May 2018), the Employer reported

-10-

342227v1

but failed to pay contributions required under its Agreements.  Specifically, the known amounts due for reports without contributions for March through June 2019, less amounts collected from third parties, plus interest (to August 7, 2019) and liquidated damages required by the Agreements and ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), are as follows:

| Month | Fringes | LDs | Interest | Total |
|-------|---------|-----|----------|-------|
| March-19 | $10,487.12 | $4,299.57 | $367.87 | $15,154.56 |
| April-19 | $11,196.22 | $3,658.11 | $269.68 | $15,124.01 |
| May-19 | $12,184.83 | $2,432.99 | $122.11 | $14,739.93 |
| June-19 | $10,315.20 | $2,059.68 | $37.80 | $12,412.68 |
| **TOTALS** | **$44,183.37** | **$12,450.35** | **$797.46** | **$57,431.18** |

32.    The Employer has failed to submit a report or payment for the month of July 2019, which was due by August 15 and delinquent after August 20, 2019.  The Employer continues to fail to pay its contributions every month, as required by the Agreements.

33.    Plaintiff is informed and believes that the Employer has under-reported contributions in its reports since the last Audit (June 2018 to present).   Plaintiff seeks a full audit in order to discover any further delinquencies due.

34.    Upon completion of the audit sought herein, Plaintiff intends to seek recovery of any damages found due, including delinquent contributions, interest, liquidated damages, audit costs, subcontracting violations, attorney's fees and costs as provided in the Agreements and 29 U.S.C. § 1132(g)(2), according to proof at the time of trial and/or other hearing.

35.    The Agreements require that, if it is necessary to obtain an audit through

-11-

342227v1

legal action, the Employer will be responsible for the legal fees and costs of the Trust Funds in obtaining such relief, whether or not (additional) contributions are found due.

**FIRST CLAIM FOR RELIEF**

**AGAINST EMPLOYER**

**FOR CONTRIBUTIONS OWED TO TRUST FUNDS**

[29 U.S.C. §§ 185, 1132(g)(2) and 1145]

36.     Plaintiff incorporates herein by reference each and every allegation of this Complaint.

37.     The Employer owes the Default Amount of contributions, interest, audit costs and liquidated damages, less payments, plus interest, amounting to $1,503.46, for the Audit Period.  Interest continues to accrue at the rate of $0.3225 per day on this amount.

38.     In addition, the Employer reported, but failed to pay (after recognizing all credits), contributions in the amount of $44,183.37, for work performed in the months of March through June 2019.  Interest of $797.46 (through August 7, 2019) and liquidated damages of $12,450.35, are also owed for these unpaid reports.  Interest continues to accrue on those known delinquencies at the rate of $12.19 per day.

39.     The Employer is liable for additional amounts, to be discovered by audit and proven at trial, of un-reported contributions.

40.     Under the terms of the Agreements and section 502(g)(2) of ERISA, the Employer is liable to the Trust Funds not only for the amount any delinquent

342227v1

contributions and subcontracting damages found due in an audit,  but also for

    a.  Pre-judgment interest on the delinquent sums at the rates provided in the Agreements;

    b.  Liquidated damages as provided in the Agreements;

    c.  Attorneys' fees and costs;

    d.  Costs of the audit.

41.    In sum, the following amounts are known to be due:

| | |
|---|---|
| Default Settlement | $    1,503.46 |
| Known Contributions: | $  44,183.37 |
| Interest to 8/26/2019: | $    1,029.15 |
| Liquidated Damages: | $  12,450.35 |
| **TOTAL:** | **$  59,166.34** |

42.    Plaintiff will seek to obtain an audit for the period of June 2018 to current.  To the extent that audit, and/or discovery in this action, reveals further delinquencies, additional contributions, interest, liquidated damages and audit costs may be owed.

43.    Pursuant to the Agreements, and ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), the Employer is liable for attorney fees and costs of suit in this action, including any fees incurred in obtaining an audit, regardless of whether a further delinquency is found.

/  /  /

/  /  /

342227v1

# SECOND CLAIM FOR RELIEF
## AGAINST EMPLOYER
## FOR PRELIMINARY AND PERMANENT INJUNCTION
[29 U.S.C. §§ 1132(g)(2)(E), 1145]

44.     Plaintiff incorporates herein by reference each and every allegation of this Complaint.

45.     As part of its obligations under the Agreements, the Employer is required to submit monthly reports to the Trust Funds indicating the names, social security numbers and number of hours worked by each employee performing work, broken down by project.  The Employer is required to pay to the Trust Funds, at the time the report is submitted, an amount equal to the total number of hours worked (or paid for), by employees performing covered work multiplied by the applicable fringe benefit contribution rates.

46.     The Employer has failed to comply with the provisions of the Agreements by refusing to report and pay contributions on behalf of its employees performing covered work to the Trust Funds.  The Trust Funds therefore seek injunctive relief to compel the submission of timely paid reports on all projects, as required by the Agreements and 29 U.S.C. § 1145.

47.     By reason of Employer's actions, the Trust Funds have suffered and will continue to suffer extreme hardship and actual and impending irreparable injury and damage in that beneficiaries of the Trust Funds acquire eligibility for health and welfare benefits and pension benefits by tabulating the number of hours reported by Employers and all contributing employers during each monthly period.  The funds necessary to pay all anticipated health and welfare claims and pension claims are

342227v1

based upon the number of hours reported to the Trust Funds on behalf of individual employees.  In addition, the amount of benefits payable to all employees for health and welfare and pension claims is actuarially determined on the basis of funds projected to be received from contributing employers.  The failure to submit monthly report forms evidencing the hours worked by employees and/or without the required payments necessarily contributes to the total potential liability of the Trust Funds for health and welfare and pension claims without the Trust Funds being able to readjust or recompute benefit levels based upon Employers' failure to disclosure and pay contributions on a monthly basis.  Without reports, broken down by project, the Trust Funds lack the information to collect delinquent contributions through mechanic liens, stop payment notices, and/or bond claims.

48.     The Trust Funds have no adequate or speedy remedy at law and this action for injunctive relief is the Trust Funds' only means of securing relief.

49.     It has been necessary for the Trust Funds to engage counsel to bring this action to compel compliance with the Agreements provide that in the event litigation is necessary with respect to any of the fringe benefit contributions and/or damages against Employer, Employer would pay reasonable attorneys' fees and all other reasonable expenses of collection, including audit fees.

## THIRD CLAIM FOR RELIEF
## AGAINST EMPLOYER AND OWNER
## FOR BREACH OF FIDUCIARY DUTIES
[29 U.S.C. §§ 1132(g)(2)(E), 1145]

50.     Plaintiff incorporates herein by reference each and every allegation of this Complaint.

342227v1

51.     Employer and Owner are both fiduciaries as to the Trust Funds, in that they each exercise authority or control respecting the management or disposition of assets of the Trust Funds, as alleged herein. As fiduciaries, they each have an obligation to use those assets under their control "(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan   .   .   .   (D) in accordance with the documents and instruments governing the plan."  ERISA § 404(a)(1),  29 U.S.C. § 1104(a)(1).

52.     Pursuant to regulations of the U.S. Department of Labor, 29 C.F.R. § 2510.3-102, the amounts withheld from employee wages meant to be transmitted to the Vacation Trust, became assets of the Vacation Trust "as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets."  By exercising control over those funds, both Employer and Owner became a fiduciary as to those assets, within the meaning of § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

53.     Pursuant to regulations of the U.S. Department of Labor, 29 C.F.R. § 2510.3-102, the amount of prevailing wages otherwise due as part of the required compensation of employees of Employer, which were meant to be transmitted to the Trust Funds, became assets of the Trust Funds "as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets."  By exercising control over those funds, Employer and Owner each became a fiduciary as to those assets, within the meaning of § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

54.     Since March 2019, the Employer and Owner failed to turn over contributions withheld from employee wages, meant for the Vacation Trust.  By doing

-16-

342227v1

so, the Employer and Owner each breached their fiduciary duties to the Vacation Trust as to their control over those assets.

55.     Since March 2019, the Employer and Owner failed to turn over to the Trust Funds contributions which constituted part of the prevailing wage of employees. By doing so, the Employer and Owner each breached their fiduciary duties to the Trust Funds.

56.     Plaintiff is informed and believes, and upon that basis alleges, that the Employer and Owner also withheld Vacation and Prevailing Wage payments for the period of June 2018 to current.  Plaintiff seeks an accounting to determine all amounts withheld since then.

57.     Pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), for breaching their fiduciary duties, the Employer and Owner "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate."  Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Plaintiff may bring an action for the "appropriate relief" provided in ERISA § 409(a).

58.     Employer and Owner are personally liable for the loss to the Vacation Trust and the Trust Funds for the failure to turn over contributions in their control, in an amount to be determined, for the period of March 2019 to present, including the amount of those withheld contributions and interest thereon.

59.     Pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), Plaintiff is

-17-

entitled to attorney fees and costs of suit for prosecuting this claim for breach of fiduciary duties.

WHEREFORE, the TRUST FUNDS pray for judgment as follows:

I.     FOR THE FIRST CLAIM FOR RELIEF, AGAINST EMPLOYER:

A.     For the Default Amount of contributions, interest, liquidated damages and audit costs due under the Settlement Agreement, which is $1,503.46 as of August 26, 2019, accruing interest at the rate of $0.3225 per day thereafter.

B.  For the known amount of known delinquent contributions of $44,183.37, plus all delinquent fringe benefit contributions and subcontracting damages found due in the full audit, and proven in Court;

C.     Interest on the contributions and subcontracting damages found due in (B), from the date the contributions became due through judgment, which is currently known to be $1,503.46 as of August 26, 2019, plus additional accrued interest at the plan rate(s), pursuant to the Agreements and 29 U.S.C. § 1132(g)(2);

D.     For liquidated damages on the contributions and subcontracting damages found due in (C), including liquidated damages for late-paid reports, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C), which is currently known to be $12,450.35;

D.     For reasonable attorneys' fees and costs of suit, pursuant to Agreements and 29 U.S.C. § 1132(g)(2)(D);

E.     For any further audit costs, pursuant to the Agreements and 29 U.S.C. § 1132(g)(2)(E); and

F.     For such other and further relief as the Court deems proper.

/  /  /

-18-

II.     FOR THE SECOND CLAIM FOR RELIEF AGAINST EMPLOYER:

A.     That this Court issue the following preliminary and permanent prohibitory and mandatory injunctions against the Employer, its managing officers, agents, managing employees, successors, assigns and all those in active concert or participation with Employer:

      1.1     That Employer be ordered to deliver the following, or cause to be delivered, to the Trust Funds' offices no later than 4:30 p.m., on the 20th day of each month for the duration of the Employer's work under the Agreements:

      1.2     A complete, truthful and accurate "Employers' Monthly Report to Trustees" covering all employees which Employer employed who were covered by the Agreements, together with a breakdown of hours by job site;

      1.3     An affidavit or declaration from a responsible officer of Employer, attesting from his or her own personal knowledge under pain of perjury to the completeness, truthfulness and accuracy of the Employer's Monthly Report to the Trustees; and

      1.4     A cashier's check made payable to the Construction Laborers Trust Funds for Southern California for the full amount of the fringe benefit contributions due on the Employer Monthly Reports for each account for which a report is to be submitted.

B.     For reasonable attorney's fees;

C.     For costs of suit herein; and

D.     For such other and further relief as the Court deems proper and just.

III.  FOR THE THIRD CLAIM FOR RELIEF, AGAINST THE EMPLOYER AND OWNER, JOINTLY AND SEVERALLY:

342227v1

A.  For an accounting, for the period of June 2018 to present, of the contributions withheld from the Vacation Trust and from the Trust Funds for prevailing wages;

B.  Liability for the amount of contributions found to be withheld from the Vacation Trust and from the Trust Funds for prevailing wages, with interest thereon;

C.  For attorney fees and costs of suit; and

D.  For such other and further relief as the Court deems proper and just.

Respectfully Submitted,

DATED: August 26, 2019

ALEXANDER B. CVITAN,
J. DAVID SACKMAN, and
MARSHA M. HAMASAKI, Members of
REICH, ADELL & CVITAN,
A Professional Law Corporation


By:   /s/ J. David Sackman
J. DAVID SACKMAN
Attorneys for Plaintiff

342227v1

**EXHIBIT "1"**

## SETTLEMENT AGREEMENT

The parties to this SETTLEMENT AGREEMENT are the CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, LLC, as fiduciary and administrative agent to Laborers Health And Welfare Trust Fund For Southern California, Construction Laborers Pension Trust For Southern California, Construction Laborers Vacation Trust For Southern California, Laborers Training And Re-Training Trust Fund For Southern California, Landscape Industry Promotion Fund, Center For Contract Compliance, Laborers Contract Administration Trust Fund For Southern California, Laborers' Trusts Administrative Trust Fund For Southern California , San Diego County Construction Laborers Pension Trust Fund ("San Diego Pension Fund") and San Diego Construction Advancement Fund 2003, (collectively "TRUST FUNDS") on the one hand, and DIGGING DEEP, INC.., a California corporation ("EMPLOYER") on the other hand - hereinafter collectively referred to as "PARTIES" - who hereby agree as follows:

## I.
## GENERAL RECITALS

This Settlement Agreement is made for the following purposes and with reference to the following facts:

1.      [AGREEMENTS]  EMPLOYER signed a collective bargaining agreement with the Southern California District Council of Laborers and its Affiliated Locals ("Union") which required, among other things, that EMPLOYER pay contributions to the TRUST FUNDS on behalf of employees covered by that agreement, as part of the compensation for their labor.  That agreement required the EMPLOYER to submit reports and contributions to the TRUST FUNDS, and to submit its books and records for inspection.

2.      [AUDIT]  Pursuant to its agreement with the Union, the TRUST FUNDS conducted an audit of the books and records of the EMPLOYER.  The Audit found contributions claimed to be due for work performed by covered employees for the period of December 1, 2016 - May 31, 2018 ("Audit Period").  The TRUST FUNDS also claim interest, liquidated damages, and audit costs.  The claim of the TRUST FUNDS, for the Audit Period, after recognizing all credits for amounts paid through any source, is:

| Contributions | | $11,299.22 |
|---|---|---|
| Interest to | 9/27/2018 | $  755.16 |
| Liquidated Damages | | $ 2,487.66 |
| Audit Costs | | $  400.00 |
| **Sub Total** | | **$14,242.04** |
| Interest from 9/27/2018 to | 1/15/2018 | $246.88 |
| **Grand Total** | | **$15,188.92** |

351757v1

Exhibit 1

This constitutes the "Trust Fund Claim." The Grand Total of $15,188.92 is the "DEFAULT AMOUNT" as described in this Agreement.

.

3. [PURPOSE] In order to avoid the costs and uncertainty of litigation, and without waiving their respective contentions as to the Trust Fund Claim, the Parties agree to settle the Trust Fund Claim, for the Audit Period only, as follows:

## II.
## SETTLEMENT OBLIGATIONS

4. [SETTLEMENT TERMS] The TRUST FUNDS agree to waive half of the Liquidated Damages claimed, and EMPLOYER agrees to enter into a payment arrangement to pay off the balance of $13,945.09 ("SETTLEMENT AMOUNT"), as follows:

4.1 [MONTHLY PAYMENTS] EMPLOYER will make five monthly payments of $2,789.02 each, beginning on January 15, 2019, and on the 15th day of each month thereafter (or first business day thereafter, if the 15th is a Saturday, Sunday or legal holiday). No later than June 15, 2019 the EMPLOYER shall make a final payment of the balance including accrued interest at the rate of 8.0%, which would be $187.08 if the five Monthly Payments are made on time. A chart calculating the anticipated payments is attached as Exhibit 1 here.

4.2 [EARLY PAYMENT] There shall be no penalty for early payment of the amounts due. In the event of an early payment, interest shall be adjusted accordingly. Upon request, the Trust Funds shall promptly provide a statement of the total amount due, including accrued interest to a specified date, which shall be accepted as payment in full.

4.3 [SECURITY] In exchange for the valuable consideration given by TRUST FUNDS in this Settlement Agreement, EMPLOYER agrees to, and by executing this Settlement Agreement does, grant TRUST FUNDS a security interest against all property of EMPLOYER which may be reached with a UCC-1 Financing Statement, and authorizes execution and recording of a UCC-1 to secure payment of the SETTLEMENT AMOUNT, plus any interest that accrues thereon under the terms of this Settlement Agreement (SECURITY). The property secured hereby includes all property which may be reached by a UCC-1 Financing Statement pursuant to the Uniform Commercial Code, including, but not limited to:

- All present and future accounts (including accounts receivables), deposit accounts, money, cash, cash equivalent, contract rights, chattel paper, investment property, security agreements and debts secured thereby, documents, notes, drafts, instruments, negotiable instruments, letters of credit, general intangibles (including, without limitation, all present and future choses and things in action, goodwill, patents, trademarks, trade names, customer lists, purchase orders, deposit accounts and tax refunds), and returned goods;

- all present and hereafter acquired inventory wherever located, including all present and future goods held for sale or lease or to be furnished under a contract of service and all raw materials, work in progress and finished goods;

- all present and hereafter acquired equipment wherever located, including machinery, machine tools, motors, equipment, controls, attachments, parts, tools, furniture, furnishings, fixtures and motor vehicles and all attachments, accessories, accessions, replacements, substitutions, additions and improvements to any of the foregoing;

- all present and future dies, drawings, blueprints, catalogs and computer programs; and   all proceeds and products of the foregoing, including accounts, deposit accounts,  money, cash, cash equivalent, contract rights, general intangibles, investment property, equipment, inventory, goods, chattel paper, documents, notes, drafts, instruments, letters of credit, insurance proceeds, and any other tangible or intangible property received upon the sale or other disposition of any of the foregoing, as well as all present and future books and records pertaining to any of the foregoing and the equipment containing said books and records.

4.4   [MONTHLY REPORTS]  As a further condition of this Settlement, the EMPLOYER shall report and pay the Monthly Contributions required by its collective bargaining agreements, on a project basis.  If the EMPLOYER reports Kevin Schweizer or any other officer or 10% or more owner of the EMPLOYER, such person shall be reported and paid at a minimum of the greater of 130 hours per month, or the actual hours worked, pursuant to the written rules of the TRUST FUNDS.

4.5   [NOTICE OF DEFAULT]  The failure to timely make any of the Monthly Payments called for in paragraph 4.1, or to timely submit and pay the Monthly Reports, including the obligation to report its officers and owners as stated in paragraph 4.4,  shall be considered a Default under this Agreement.  TRUST FUNDS agree to give ten (10) calendar days written notice of default, stating the basis for the default and the actions necessary to correct it, and EMPLOYER shall have ten (10) calendar days from the date of such notice to cure its default; however, if more than two (2) written notices are required in a twelve (12) month period, EMPLOYER will be required to pay a total of an additional Five Hundred Dollars and No Cents ($500.00)  for the TRUST FUNDS' attorneys' fees and costs for the written notices in order to maintain the payment plan.  The notice of default will be sent to EMPLOYER by regular first class mail, to the address listed below, and via email to the address listed below, unless EMPLOYER designates another manner of receiving notice.  Notice shall be effective, and the ten (10) calendar days to cure shall commence on the date of mailing, email or other transmittal as specified below.  Where the giving of the notice called for in this paragraph would, in and of itself, be illegal, such notice is waived.

4.6   [DEFAULT]  Upon default of its obligations under this Settlement Agreement, and failure to cure said default as required or allowed under Section 4.5, above, then the SETTLEMENT AMOUNT shall revert to the DEFAULT AMOUNT, less any payments or credits up to the date of

default, plus any accrued interest.  The TRUST FUNDS shall provide EMPLOYER with an accounting of such amount.  Upon Default, the TRUST FUNDS, at their option, may do any or all of the following:

a) File suit to enforce the Trust Fund Claim; and/or
b) Enforce the SECURITY to the full extent allowed by the Uniform Commercial Code.

4.7    [FINAL PAYMENT AND RELEASE]  Upon final payment of the SETTLEMENT AMOUNT, including any accrued interest and attorney fees assessed in accordance with this Settlement Agreement, the Trust Funds shall release the UCC-1 Filing, above;

4.8    [GENERAL RELEASE]  Upon full payment of the SETTLEMENT AMOUNT plus interest as provided for by this Settlement Agreement, and the expiration of ninety (90) days from receipt of the final payment, this Settlement Agreement will serve to release and fully discharge EMPLOYER, from the Trust Fund Claim for the Audit Period only.

5.    [RELEASE OF UNKNOWN CLAIMS] The TRUST FUNDS expressly waive any rights or benefits conferred by the provisions of Section 1542 of the Civil Code of the State of California, which provides as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

The TRUST FUNDS acknowledge and represent that they have consulted with legal counsel before effecting this settlement and executing this Settlement Agreement and that they understand its meaning, including the effect of Section 1542 of the California Civil Code, and expressly consent that this Settlement Agreement shall be given full force and effect according to each and all of its express terms and provisions, including those relating to the release of unknown and unsuspected claims, demands, and causes of action.

6.    [PAYMENTS]  All payments called for in this Settlement Agreement shall be made out to "Construction Laborers Trust Funds," reference the number "LTADC.1433A" on its face and be received by the due date at:

Reich, Adell & Cvitan
3550 Wilshire Blvd. Suite 2000
Los Angeles, CA 90010
Attn: Maria Hughes

## III.
## BREACH OF AGREEMENT

Exhibit 1

7.     [ENFORCEMENT]  In any action to enforce the terms of this Settlement Agreement, the prevailing party shall be awarded reasonable attorney's fees and costs. This Settlement Agreement shall not inure to the benefit of any person or entity not a party to the Agreement and no person or entity not a party to this Settlement Agreement is released from any liability or claim.

8.     [NO ADMISSION]  In making this Agreement no party is admitting the sufficiency of any claims, allegations, defenses, affirmative defenses, or any other positions taken against that party.

## IV.
## MISCELLANEOUS PROVISIONS

9.     [AUTHORITY]  The PARTIES acknowledge that the terms of this Settlement Agreement have been ratified and/or approved by their corporate officers, directors, administrators, shareholders and/or Trustees and that the persons signing this Settlement Agreement on behalf of each of the PARTIES have full authority to do so and to bind the Parties to its terms.  Additionally, to the extent desired, the PARTIES have reviewed this Settlement Agreement with an attorney of their own choosing and this Settlement Agreement is being voluntarily entered into by each of the PARTIES.

10.    [APPLICABLE LAW]  It is understood that the Trustees of the TRUST FUNDS have certain obligations to collect employer delinquencies.  This Agreement is meant to comply with those obligations, including U.S. Department of Labor Prohibited Transaction Class Exemption No. 76-1, which addresses such obligations, and shall be interpreted accordingly.  This Agreement shall be interpreted so as to fulfill the intent to comply with such obligations.  To any extent that federal law does not control, this Agreement shall be construed in accordance with and governed by the laws of the State of California.

11.    [ENTIRE AGREEMENT]  This Settlement Agreement contains the sole and entire agreement and understanding of the PARTIES with respect to the entire subject matter hereof, and any and all prior discussions, negotiations, commitments and understandings related hereto are hereby merged herein.  No representations, oral or otherwise, express or implied, other than those contained herein have been made by any of the PARTIES hereto.  No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the PARTIES hereto.

12.    [ILLEGALITY]  Should any provision of this Settlement Agreement be declared or determined by any court of competent jurisdiction to be illegal, invalid, or unenforceable, the legality, validity, and enforceability of the remaining parts, terms or provisions shall not be affected thereby and said illegal, unenforceable or invalid part, term, or provision shall be deemed not to be part of this Settlement Agreement.

13.    [COUNTERPARTS AND FACSIMILE SIGNATURES]  This Settlement Agreement may be executed in counterparts, each counterpart being considered an original document.  Also, the PARTIES agree that a facsimile/e-mailed signature on the Settlement

Agreement shall be acceptable and deemed to be an original signature in lieu of an original signature.

14.    [NOTICE]  Any notice to be given pursuant to this Settlement Agreement shall be given to the person(s) and in the manner described below.  Notice shall be deemed effective upon the date of mailing or other transmittal.  It is the responsibility of each party to provide all other parties with any change of address or manner of service.  Notice shall be given to:

To TRUST FUNDS:

c/o Reich, Adell & Cvitan
by mail to:
3550 Wilshire Blvd., Suite 2000
Los Angeles, CA 90010

By fax to: (213) 386-5583
By email to:  jds@rac-law.com , with a copy to MariaH@rac-law.com

To EMPLOYER:

Attn: Tamie Huset
Digging Deep, Inc
7231 Boulder Ave. #506
Highland, CA 92346
By fax to: (951) 801-5570

By Email to tamiediggingdeep@gmail.com, with a copy to byrungaray@denovofirm.com

(*Signatures on next page(s)*)

SO AGREED:


DATED: _____, 2019          CONSTRUCTION LABORERS TRUST FUNDS
                                  FOR SOUTHERN CALIFORNIA
                                  ADMINISTRATIVE COMPANY, LLC


                                  By:_____
                                      HANY KILADA, Executive Director


DATED: January 11th, 2019         DIGGING DEEP, INC., a California Corporation


                                  By:_____
                                      PRINT NAME: Kevin Schweizer
                                      TILE: CEO


APPROVED AS TO FORM AND CONTENT:


DATED: Jan 11  2019               ALEXANDER B. CVITAN
                                  J. DAVID SACKMAN
                                  MARSHA M. HAMASAKI
                                  REICH, ADELL & CVITAN


                                  By:_____
                                      J. David Sackman
                                      Attorneys for TRUST FUNDS


DATED: Jany 11  2019


                                  By:_____
                                      Attorneys for EMPLOYER

351757v1                                                            Exhibit 1

**SO AGREED:**

DATED: __1/15__, 2019

**CONSTRUCTION LABORERS TRUST FUNDS
FOR SOUTHERN CALIFORNIA
ADMINISTRATIVE COMPANY, LLC**

By:_____
HANY KILADA, Executive Director

DATED: January 11th, 2019

**DIGGING DEEP, INC., a California Corporation**

By:_____
PRINT NAME: Kevin Schweizer
TILE: CEO

**APPROVED AS TO FORM AND CONTENT:**

DATED: Jan 11 2019

**ALEXANDER B. CVITAN
J. DAVID SACKMAN
MARSHA M. HAMASAKI
REICH, ADELL & CVITAN**

By:_____
J. David Sackman
Attorneys for TRUST FUNDS

DATED: Jan 11, 2019

By:_____
Attorneys for EMPLOYER

**EXHIBIT "2"**

Exhibit 2

|  | As of: | | 08/26/19 |
|---|---|---|---|

| Digging Deep Payment Plan | | | |
|---|---|---|---|

| **Default Amount** | **$15,188.92** | Contributions | | $11,299.22 |
|---|---|---|---|---|
| | | Interest to | 09/27/18 | $755.16 |
| | | Interest from 9/27/2018 | | |
| Settlement | $13,945.09 | to | 01/15/19 | $246.88 |
| Interest | 8.00% | Liquidated Damages | | $2,487.66 |
| Down Payment | $0.00 | Audit Costs | | $400.00 |
| Start Date | 01/15/19 | **Total Default Amount** | | **$15,188.92** |
| | | Less Half LDs | | -$1,243.83 |
| | | **Settlement Amount** | | **$13,945.09** |

| Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|
| 01/15/19 | $2,789.02 | $0.00 | $2,789.02 | $12,399.90 |
| 02/15/19 | $2,789.02 | $84.25 | $2,704.77 | $9,695.14 |
| 03/18/19 | $2,789.02 | $65.87 | $2,723.14 | $6,971.99 |
| 04/19/19 | $2,789.02 | $48.90 | $2,740.12 | $4,231.87 |
| 05/20/19 | $2,789.02 | $28.75 | $2,760.26 | $1,471.61 |
| 06/15/19 | $0.00 | $8.39 | | $1,479.99 |
| 07/15/19 | $0.00 | $9.73 | | $1,489.73 |
| 08/15/19 | $0.00 | $10.12 | | $1,499.85 |
| **08/26/19** | **$0.00** | **$3.62** | | **$1,503.46** |
| 10/15/19 | | $16.48 | | $1,519.94 |
| 11/15/19 | | $10.33 | | $1,530.27 |
| 12/15/19 | | $10.06 | | $1,540.33 |
| | | | | |

**EXHIBIT "3"**

# REICH, ADELL & CVITAN

A PROFESSIONAL LAW CORPORATION

3550 WILSHIRE BOULEVARD, SUITE 2000
LOS ANGELES, CALIFORNIA 90010
TEL: (213) 386-3860 • FAX: (213) 386-5583
www.rac-law.com

ALEXANDER B. CVITAN        J. DAVID SACKMAN
MARIANNE REINHOLD          MARSHA M. HAMASAKI
LAURENCE S. ZAKSON         PETER A. HUTCHINSON
NEELAM CHANDNA             ZACK METH
WILLIAM Y. SHEH            ARTHUR N. FOUR
NATALIA BAUTISTA           ARA KARAMIAN
AARON G. LAWRENCE          ILISSA B. GOLD

JULIUS MEL REICH           HIRSCH ADELL
(1933-2000)                (1931-2018)

May 30, 2019

Via E-Mail & U.S. Mail
Email: tamiediggingdeep@gmail.com

Tamie Huset
Digging Deep, Inc.
7231 Boulder Ave., Ste. 298
Highland, CA 92346

>          Re:   Digging Deep, Inc., Account # 116962
>                NOTICE OF DEFAULT – Construction Laborers Trust Funds

Dear Ms. Huset:

Digging Deep entered into a Settlement Agreement (attached) to settle delinquencies found in an audit.  Pursuant to that settlement, certain damages were waived, on the condition that the Settlement Agreement be fully complied with.  One of those conditions was that Monthly Reports be timely submitted and paid.  It has come to our attention that Digging Deep failed to pay contributions, according to its report, for the month of March 2019.  The amounts outstanding from that report are:

| | |
|---|---|
| Contributions: | $21,532.98 |
| Interest to 5/31/2019: | $     184.06 |
| Liquidated Damages: | $  4,299.57 |
| NSF Fees: | $       35.00 |
| TOTAL: | $26,051.61 |

This is therefore NOTICE OF DEFAULT under paragraph 4.5 of the Settlement Agreement.  **In order to cure this Default, you must pay the full amount above ($26,051.61), PLUS the balance of the Payment Plan, which is $194.45** (schedule attached)**, within 10 days of the date of this letter, i.e. by June 10, 2019, for a total of <u>$26,246.06</u>**.  If the Default is not timely cured, then the waiver of damages in the Settlement Agreement is void, and there will be an *additional* $1,479.99 immediately due and enforceable (see default schedule attached).

Exhibit 3

Tamie Huset
May 30, 2019
Page 2


Please deliver your payment by cashier's check directly to the Trust Fund office to ensure immediate credit.  NO status letters will be issued while you are in Default.  If you have any questions, please direct them to me by email: jds@rac-law.com

Sincerely,

J. David Sackman
of REICH, ADELL & CVITAN

JDS/mhl
Enclosure:      Settlement Agreement
                Payment Plan Schedule
                Default Schedule

cc:     Benjamin Yrungaray (via email: byrungaray@denovofirm.com)
        Jon Preciado, SCDCL (w/encl. - via email)
        Alex Mireles, CLTF (w/encl. – via email)

337923v1

Exhibit 3